```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF FLORIDA
                       WEST PALM BEACH DIVISION
                       CASE NO.  17-80089-KAM


   UNITED STATES OF AMERICA,

                Plaintiff,

        vs.
                                            West Palm Beach, Florida
                                            June 21, 2017
   MOHAMMED MUSTAFA AGBAREIA,               Pages 1-13

                Defendant.
   _____


              TRANSCRIPT OF INITIAL APPEARANCE
           BEFORE THE HONORABLE JAMES M. HOPKINS
                UNITED STATES MAGISTRATE JUDGE


   APPEARANCES:

   FOR THE PLAINTIFF:
                          United States Attorney's Office
                          BY:  JARED M. STRAUSS, A.U.S.A.
                          500 East Broward Boulevard
                          Suite 700
                          Fort Lauderdale,  Florida 33394


   FOR THE DEFENDANT:
                          BY:  LARRY D. MURRELL, JR., ESQ.
                          400 Executive Center Drive
                          Suite 201
                          West Palm Beach, Florida 33401


   TRANSCRIBED BY:        DAWN M. SAVINO, RPR
                          Official Court Stenographer
                          400 N. Miami Avenue, 10S03
                          Miami, Florida  33128
                          Telephone:  305-523-5598



             PROCEEDINGS RECORDED BY DIGITAL AUDIO RECORDING
                    TRANSCRIPT PRODUCED BY COMPUTER
```

```
 1                        P-R-O-C-E-E-D-I-N-G-S
 2              THE COURT:  Let me call it.  Yeah.
 3              Calling United States versus Mohammed Mustafa Agbareia.
 4              Counsel, please announce your appearance.
 5              MR. STRAUSS:  Good afternoon, Your Honor.  Jared
 6    Strauss on behalf of the United States.
 7              MR. MURRELL:  Donny Murrell on behalf of Mr. Agbareia.
 8              THE COURT:  Okay.  Would you swear the Defendant in?
 9              COURTROOM DEPUTY:  Would you raise your right hand?  Do
10    you swear the statements you're about to make before this Court
11    shall be the truth, the whole truth and nothing but the truth,
12    so help you God?
13              THE DEFENDANT:  Yes, I do.
14              COURTROOM DEPUTY:  Please state your full name.
15              THE DEFENDANT:  Mohammed Agbareia.
16              THE COURT:  Mr. Agbareia, you are here for an initial
17    appearance on an indictment charging you with wire fraud in
18    Counts 1 through 4, which each carries a maximum penalty of 20
19    years imprisonment, $250,000 fine and three years supervised
20    release.
21              You have the right to have an attorney represent you.
22    If you cannot afford one, one will be appoint for you.
23              You also have the right to remain silent.  Anything you
24    say can be used against you.  If you choose to make any
25    statements, you can, at any time, change your mind and
```

```
1    thereafter remain silent.  Do you understand?
2            THE DEFENDANT:  I understand it.
3            THE COURT:  Do you want me to ask you questions to see
4    if you qualify for a court appointed attorney?
5            THE DEFENDANT:  Yes, sir.
6            THE COURT:  Do you own anything anywhere in the world
7    valued at $5,000 or more?
8            THE DEFENDANT:  My wife is the owner for that.  She
9    owns two cars.
10           THE COURT:  Okay.  Anything else?
11           THE DEFENDANT:  That's it.
12           THE COURT:  Okay.  I find that you are indigent and
13   I'll appoint Mr. Murrell to represent you.  And thanks for
14   making yourself available this afternoon.
15           What's the Government's bond recommendation?
16           MR. STRAUSS:  Your Honor, the Government is
17   recommending pretrial detention based on risk of flight.
18           THE COURT:  Okay.  And what's the basis for the
19   recommendation?
20           MR. STRAUSS:  Your Honor, there are several bases for
21   the recommendation.
22           First is -- first is the strength of the Government's
23   case.  The Defendant is currently facing four counts of wire
24   fraud, each carry a maximum of 20 years.  We estimate, based on
25   the guidelines, he faces an estimated range of 63 to 78 months.
```

1              The Defendant was engaged in what we refer to as a
2     stranded traveler scam.  Essentially he would call up -- he
3     would call up victims, either in the United States or in other
4     countries, and try to make appointments to meet with them under
5     various guises.  As an example, in one guise, he would pretend
6     to be a medical tourist, someone who is seeking medical
7     attention either for himself or for someone else, and would call
8     a doctor's office, make arrangements to travel to wherever the
9     doctor was living in order to have that treatment.  A day or two
10    before he was scheduled for this appointment, he would call up
11    again and claim that he had been stranded, that he was stuck in
12    the airport, lost his luggage, lost his wallet and needed the
13    doctor to wire him money in order for him to, you know, buy
14    another ticket to complete his travel.  The money would then be
15    wired Western Union and the Defendant would go pick it up and
16    keep the money and that would be the end of their communication.
17             Based on what Mr. Agbareia has already admitted to to
18    the FBI, he has been conducting this scheme -- well one, he was
19    already convicted of conducting this kind of scheme once before
20    back in 2005, 2006 in Federal District Court in Alabama.  He
21    re-started that scheme again in 2007 and seems to have been
22    conducting it fairly continuously since then, really up until
23    yesterday.
24             The Government believes that he's -- pursuant to this
25    scheme, he's caused more than 200 wires from victims of funds to

1  him amounting to more than $284,000 worth of loss.  Again, he
2  has admitted this conduct to the FBI, both in an interview last
3  September and then in a post-Miranda interview this morning when
4  he was arrested.
5          When he -- pursuant to this scheme, he uses many
6  different aliases.  During his post-Miranda interview today, he
7  identified himself in videos of himself picking up wires at
8  Publix grocery stores in the Palm Beach County area under
9  various different pseudonyms.  We have video of him conducting
10 at least nine such transactions during this year 2017, and
11 again, he's identified himself in each one.  In each one --
12 excuse me -- he was using again various different aliases.
13         Also to commit this scheme, he uses false identities,
14 false identifications.  He's admitted to the FBI that he makes
15 these identifications himself and has even gotten access to
16 holograms to help him produce more genuine looking
17 identifications.  The identifications he produces purport to be
18 some type of Canadian identification, although they are
19 completely fictitious.
20         So that's a summary of the case against him.  And part
21 of the basis for detention is the strength of that case, again
22 having the Defendant's own confessions, him identifying himself
23 on video conducting some of these transactions, and the amount
24 of time that he's facing.
25         The second basis is he currently does not have legal

1  immigration status in the United States.  He was initially
2  paroled into the United States and received deferred action
3  several times.  His latest deferred action expired in April.  He
4  has currently received a notice to appear from Immigration
5  Services and charged with being an alien present in the United
6  States without a visa.  We've been informed by immigration
7  authorities that they intend to take him into immigration
8  custody for detention in the Krome facility if he is released on
9  bond in this case.
10           While his wife and his son do live here and he's been
11  living with them here in Palm Beach County, I believe he also
12  has ties to the State of Israel, that is where his citizenship
13  is, including his mother and, I believe, at least one brother
14  living there as well.
15           In addition to his lack of status, his access to false
16  identifications and the case against him, I should also mention
17  that he's admitted -- regarding the identifications, he has
18  traveled under passports in other names before.  He's admitted
19  that, I believe, back in the 90s to obtaining a British passport
20  and a false identity and using that to travel.  I believe he's
21  also, if I'm correct, and I'd have to check with the agents
22  behind me, but I believe he's also previously obtained an
23  Israeli passport in a name slightly different from his own and
24  used that to travel into Canada.  So again, the access to false
25  identifications raises the specter of potentially traveling even

while under bond.

Finally Your Honor, what concerns us is, as I've said earlier, the Defendant initially admitted this scheme -- to conducting the scheme back in September to agents of the FBI. He was specifically admonished at that time to cease the activity. Based on the evidence of the investigation, he has not done so; in fact, he has continued to commit this scheme, in fact prolifically, really even up until yesterday.

Based on his continued fraudulent activity, even in the face of knowing that it was under investigation, even knowing that he was likely to be charged with that offense, it suggests that he is -- it suggests that he may not be able to follow the conditions of bond, similarly if he is not able to heed the warnings of the FBI to stop his fraudulent activities.

There is one matter, Your Honor, that I think in candor I should share with the Court. Although if we could share that information sidebar with defense counsel present, I think -- I think that would be the most appropriate thing to do.

THE COURT: Do you want to go sidebar?

MR. STRAUSS: Yes please.

MR. MURRELL: I would like my client to be present because, Judge, I need -- I've been handed a page and a half of material that I'm not sure what I'm allowed to do with, but I would like my client to hear whatever the Government is about to say so that he can confirm it with me or tell me that it's not

```
 1    accurate.
 2            MR. STRAUSS:  That's perfectly fine, Your Honor.  I
 3    have no objection to the client being part of the sidebar.
 4            THE COURT:  We can just go off the record if you want.
 5    There's nobody in court that --
 6            MR. STRAUSS:  That's fine, Your Honor.
 7            THE COURT:  Okay.  So we're back on the record now and
 8    we're at the stage where I'm just asking the Government for the
 9    basis for their detention request and then I'll get to the
10    defense and ask them what you want to do.  I mean, do you want
11    to have a full-blown hearing today?  Do you want to have a
12    full-blown hearing at some future date?  You know, what your
13    position is.  I'm just satisfying myself that there is a good
14    faith basis to ask for detention, at which point we would have,
15    if you so desire, a detention -- a full-blown detention hearing.
16            So I don't know as I need to get into anything else
17    right now unless you want to have a full detention hearing now,
18    and the Government is prepared to do that.  So are you -- do you
19    have anything else to tell me at this stage?
20            MR. STRAUSS:  No, Your Honor.  I think I've adequately
21    summarized the basis for our detention request.
22            THE COURT:  Okay.  So Mr. Murrell, what's your
23    pleasure?  I mean, do you want to have a detention hearing now
24    or at some time in the future?  What's your pleasure?
25            MR. MURRELL:  No, sir.  I would prefer that you rule
```

1  that they haven't established enough of a good faith claim for
2  there to be a detention hearing.
3      THE COURT: Well, the fact that he's out -- you know,
4  it's a two-step process. And the first step is a minimal step,
5  it's basically I have to assess whether or not they're making a
6  good faith basis to ask for detention. And that's a minimal
7  standard, and I think that they've met that minimal standard
8  here where the person is not a US citizen, is subject to
9  deportation, they said that he will be taken into immigration
10 custody if he is released. He has used fake names and fake
11 passports in the past. I mean, without even getting into the
12 rest of the equation, that by itself, that's more than enough
13 good faith basis to ask for detention.
14      MR. MURRELL: It would be if all of those things had
15 not happened at the Government's direction. And unless I'm
16 missing --
17      THE COURT: Hold on. Hold on. Did all those things
18 happen at the Government's direction?
19      MR. STRAUSS: No, Your Honor.
20      MR. MURRELL: Well, what parts did not, Judge? Because
21 he has been working --
22      THE COURT: Did any of those things that you've just
23 outlined happen at the Government's direction or were all of
24 those things that you mentioned things that he did on his own?
25      MR. STRAUSS: The only thing that's been at the

1   Government's direction that I've mentioned is his presence in
2   the United States.  None of the activities that he undertook --
3           THE COURT:  Okay.  So all the things that I mentioned
4   that support their good faith basis, according to the
5   Government, were done in his own initiative.  And that supports
6   a good faith basis to ask for detention.
7           MR. MURRELL:  All right.  Well then, Judge, we would
8   like to have a detention hearing.
9           THE COURT:  When would you like to have it?
10          MR. MURRELL:  I need some time to prepare.  I just met
11  him.
12          THE COURT:  Sure.
13          MR. MURRELL:  Can we do it --
14          THE COURT:  Sounds like a complex detention hearing to
15  me.
16          MR. MURRELL:  Can we do it Monday?
17          THE COURT:  We can do Tuesday.
18          MR. MURRELL:  Tuesday's fine.
19          THE COURT:  Are you going to be able to do it Tuesday,
20  Mr. Strauss?
21          MR. STRAUSS:  Tuesday is actually a little difficult
22  for me, at least in the morning, Your Honor.
23          THE COURT:  We can do it in the afternoon.  Right now I
24  think I'm free on Tuesday.
25          COURTROOM DEPUTY:  You have the 11:00.

```
 1                THE COURT:  An 11:00 hearing?  That's it?
 2                COURTROOM DEPUTY:  Yeah.
 3                THE COURT:  I can do it any time in the afternoon.
 4                MR. STRAUSS:  All right.  I'm free whatever time in the
 5     afternoon.
 6                THE COURT:  Tuesday afternoon?
 7                MR. STRAUSS:  We'll be here.
 8                THE COURT:  What time?  Any preference?
 9                MR. MURRELL:  You tell us, Judge.
10                THE COURT:  What time do you prefer, Tanya?
11                COURTROOM DEPUTY:  1?  2?
12                THE COURT:  1 or 2?
13                MR. MURRELL:  2.
14                THE COURT:  2.  Okay.  Do you want to prepare him to be
15     arraigned and we'll arraign him?
16                MR. MURRELL:  Judge, I have done that already.  We went
17     over the indictment.  Judge, if you don't -- could we wait until
18     the detention hearing?  And the only reason I say that is
19     because I read the indictment and I have some questions about
20     whether it alleges the facts or the allegations with enough
21     specificity on the fraud issue.  And I don't want to waive that
22     argument by waiving reading and --
23                THE COURT:  I don't know that you do waive it.
24                MR. MURRELL:  All right.
25                THE COURT:  I don't know.  I didn't say you don't.
```

```
 1            MR. MURRELL:  Well, then I would rather just --
 2            THE COURT:  I just said I don't know.
 3            MR. MURRELL:  We'll be back Tuesday, and an arraignment
 4   doesn't take that long, if you don't mind.  I'll check on it.
 5            THE COURT:  He's got to waive his speedy trial rights
 6   for the period between today and Tuesday the 27th.
 7            MR. MURRELL:  We will.
 8            THE COURT:  Prepare to waive his speedy trial rights --
 9   it's an indicted case.  Is he prepared to waive his speedy trial
10   rights for the period between now and June 27, 2017?
11            MR. MURRELL:  Yes, sir.
12            THE COURT:  Now, I have to ask you, I have to ask the
13   Defendant, are you prepared to waive your speedy trial rights
14   for the period between today and Tuesday, June 27th?  And I have
15   to advise you that both you, the Government and the public have
16   the right to a speedy trial and by delaying your arraignment
17   until Tuesday, it means that speedy trial clock will not be
18   running and we won't be proceeding to trial, a speedy trial,
19   that period between now and Tuesday.  And so you won't be
20   requiring the Government to give you a speedy trial for that
21   period.  The speedy trial clock won't start running until
22   Tuesday.
23            Are you willing to waive your speedy trial rights for
24   the period between now and Tuesday?
25            THE DEFENDANT:  May I ask my --
```

THE COURT:  Sure.  You can talk to your lawyer.

THE DEFENDANT:  Yes.

THE COURT:  Very well.  I find that the speedy trial clock is tolled for the period between today and Tuesday, the 27th of June in that the interests of justice outweighs the right to a speedy trial in order to allow the defense to prepare for arraignment and it specifically outweighing the public's right to a speedy trial.

And so we'll see you Tuesday afternoon at 2:00 for an arraignment and detention hearing.  Thank you.  Thank you all.

MR. STRAUSS:  Thank you, Your Honor.

THE COURT:  And thanks again for coming in this afternoon.

MR. MURRELL:  You're welcome, Judge.

(PROCEEDINGS CONCLUDED)

\* \* \* \* \*

C E R T I F I C A T E

I certify that the foregoing is a correct transcript from the digital audio recording of proceedings in the above-entitled matter.

9-1-2017              /s/ Dawn M. Savino
Date                  DAWN M. SAVINO, RPR