1               UNITED STATES DISTRICT COURT
              SOUTHERN DISTRICT OF FLORIDA
2
                 Case No. 17-80089-CR-KAM
3
UNITED STATES OF AMERICA,      )
4                              )
       GOVERNMENT,             )
5                              )
       -v-                     )
6                              )
MOHAMMED MUSTAFA AGBAREIA,     )
7                              )
       DEFENDANT.              )   West Palm Beach, Florida
8                              )   October 27, 2017
_____)
9

10        TRANSCRIPT OF CHANGE OF PLEA AND SENTENCING

11     PROCEEDINGS BEFORE THE HONORABLE KENNETH A. MARRA

12                UNITED STATES DISTRICT JUDGE

13

14   Appearances:

15   FOR THE GOVERNMENT          Jared M. Strauss, AUSA, and
                                Michael Walleisa, AUSA
16                              United States Attorney's Office
                                500 East Broward Boulevard
17                              Suite 700
                                Ft. Lauderdale, FL 33394
18
     FOR THE DEFENDANT          Larry D. Murrell, Jr., ESQ.
19                              400 Executive Center Drive
                                Suite 201
20                              West Palm Beach, FL 33401

21   Reporter                   Stephen W. Franklin, RMR, CRR, CPE
     (561)514-3768              Official Court Reporter
22                              701 Clematis Street
                                West Palm Beach, Florida  33401
23                              E-mail:  SFranklinUSDC@aol.com

24

25

```
 1              (Call to the order of the Court.)

 2              THE COURT:  Good morning, everyone.  Please be

 3    seated.

 4              We are here in the case of the United States of

 5    America versus Mohammed Agbareia, case number

 6    17-80089-CR-MARRA.

 7              May I have counsel state their appearances, please.

 8              MR. STRAUSS:  Good morning, Your Honor.  Jared

 9    Strauss and Mike Walleisa on behalf of the United States.

10              MR. WALLEISA:  Good morning, Your Honor.

11              THE COURT:  Good morning.

12              MR. MURRELL:  Good morning, Judge.  Donny Murrell on

13    behalf of Mohammed Agbareia who's present in court.

14              THE COURT:  Good morning.

15              We are here for a change of plea, so if I could have

16    the defendant approach the lecturn, please.  Is he going to

17    have any difficulty standing?  If he is, we can have him stay

18    at the . . .

19              MR. MURRELL:  Can you stand?

20              THE DEFENDANT:  Yeah.

21              THE COURT:  You sure?

22              MR. MURRELL:  He's fine.  I think he's almost more

23    comfortable standing than sitting.

24              THE DEFENDANT:  Yeah.

25              THE COURT:  Okay.  If you're not comfortable you can
```

```
 1  be seated.

 2           THE DEFENDANT:  Mohammed Agbareia.

 3           THE COURTROOM DEPUTY:  Please raise your right hand.

 4              Mohammed Agbareia, Defendant, sworn.

 5           THE COURTROOM DEPUTY:  Please state your name again

 6  for the record.

 7           THE DEFENDANT:  Agbareia, Mohammed.

 8                      Examination

 9  BY THE COURT:

10  Q    Sir, do you understand you're now under oath, and if you

11  make any false statements to me during our discussion, those

12  false statements could later be used against you in a

13  prosecution for perjury or making a false statement?

14  A    I do, sir.

15  Q    How old are you?

16  A    Fifty-one.

17  Q    Have you taken any drugs, medicine or alcohol that might

18  affect your ability to understand today's proceedings or

19  affect your ability to make a knowing and intelligent decision

20  regarding this case?

21  A    No, Your Honor.

22  Q    Can you read and write English?

23  A    Yes, I do.

24  Q    Have you ever been treated for or suffered from any type

25  of mental disease or illness?
```

```
 1   A     Just -- I've never been treated for anything at all.
 2   Just recently I've been hospitalized for one week at the
 3   county jail.
 4   Q     Okay.  But I'm talking about any mental problems.
 5   A     No, sir.
 6   Q     Any mental diseases or illnesses?
 7   A     No, Your Honor.  No, Your Honor.
 8   Q     Have you ever been treated for or suffered from any type
 9   of drug or chemical addictions?
10   A     No, Your Honor.
11   Q     How much education have you had?
12   A     I reached master's degree in physics.
13   Q     Master's in physics?
14   A     Yeah, yeah.
15   Q     Okay.  All right, sir.  Have you seen the document that
16   was filed by the United States against you in this case called
17   a "Superseding Indictment" that sets forth the charges that
18   have been brought against you in this case?
19   A     Yes, Your Honor.
20   Q     And did you read that superseding indictment?
21   A     Yes, Your Honor.
22   Q     After you read the superseding indictment, did you
23   discuss it fully and completely with your attorney?
24   A     Yes, Your Honor.
25   Q     And after you read the superseding indictment and
```

1    discussed it with your attorney, did you have a full and

2    complete understanding of the charges that have been brought

3    against you in this case?

4    A    Yes, Your Honor.

5    Q    Did you discuss with your attorney the evidence the

6    United States has gathered and intends to present against you

7    if this case were to proceed to a trial?

8    A    Yes, Your Honor.

9    Q    Did you discuss with your attorney any defenses that you

10   might have to these charges?

11   A    Yes, Your Honor.

12   Q    Do you believe your attorney has done everything he could

13   to defend you in this case?

14   A    Yes, Your Honor.

15   Q    Is there anything your attorney has not done that you

16   believe he should have done in order to defend you in this

17   case?

18   A    Not for -- I mean, he has done everything in his power

19   to -- to be to my assistance and to defend me, yes.

20   Q    So are you satisfied that you have received competent

21   representation from your attorney in this case?

22   A    Yes, Your Honor.

23   Q    Now, sir, it's my understanding that you and the United

24   States have reached an agreement between yourselves as to how

25   you believe this case should be resolved, and I've been handed

1    this document that I'm holding that's entitled a "Plea

2    Agreement."  Have you seen this document I'm holding?

3    A    Yes, Your Honor.

4    Q    Did you read it?

5    A    I did, Your Honor.

6    Q    After you read the plea agreement, did you discuss it

7    fully and completely with your attorney?

8    A    Yes, Your Honor.

9    Q    After you read the plea agreement and discussed it with

10   your attorney, did you have a full and complete understanding

11   of all the terms and provisions of this plea agreement?

12   A    Yes, Your Honor.

13   Q    After you read the plea agreement, discussed it with your

14   attorney and understood it, did you then sign the plea

15   agreement on the last page on that bottom signature line?  Is

16   that your signature?

17   A    Yes, Your Honor, that's mine.

18   Q    Did you sign the plea agreement freely and voluntarily?

19   A    Yes, Your Honor.

20   Q    Did anyone force you or threaten you in any way to sign

21   this plea agreement?

22   A    No, sir, no.

23   Q    Did anyone force you or threaten you in any way to come

24   here today to change your plea from not guilty to guilty?

25   A    No, Your Honor.

```
1    Q     You're doing this freely and voluntarily?

2    A     Yes, Your Honor.

3    Q     Now, sir, according to the plea agreement, you are going

4    to plead guilty to count 5 of the superseding indictment, and

5    that count charges you with wire fraud, in violation of Title

6    18 of the United States Code, Sections 1343 and Second 2.  Do

7    you understand that's the charge to which you are pleading

8    guilty?

9    A     Yes, Your Honor.

10   Q     And do you understand in exchange to your agreement to

11   plead guilty to count 5 of the superseding indictment, the

12   United States has agreed to dismiss all the other charges that

13   are pending against you?  Do you understand that?

14   A     Yes, Your Honor.

15   Q     Now, sir, do you understand that by pleading guilty to

16   count 5 of the superseding indictment, the maximum term of

17   imprisonment that can be imposed upon you is 20 years of

18   imprisonment?  Do you understand that?

19   A     Yes, Your Honor, yes.

20   Q     Do you understand that in addition to any term of

21   imprisonment that can be imposed upon you, you could be placed

22   on supervised release for up to three years?

23   A     Yes, Your Honor.

24   Q     Do you understand if you are placed on supervised

25   release, you will be required to follow and abide by certain
```

```
 1    rules, regulations and conditions imposed by the Court?

 2    A    Yes, Your Honor.

 3    Q    Do you understand if you violate or fail to comply with

 4    the terms of your supervised release, you could be sent back

 5    to prison for an additional period of time?

 6    A    Yes, Your Honor.

 7    Q    Do you understand that in addition to a term of

 8    imprisonment and a term of supervised release, you could be

 9    fined in this case up to $250,000, or two times the amount of

10    gain that you may have obtained as a result of your conduct,

11    or two times the amount of loss that you may have -- others

12    may have suffered as a result of your conduct, whichever is

13    greater?  Do you understand that?

14    A    Yes, Your Honor.

15    Q    Do you understand you also will have a $100 special

16    assessment imposed upon you at the time of sentencing?

17    A    Yes, Your Honor.

18    Q    And do you understand you will be ordered to pay

19    restitution to reimburse anyone that may have suffered a loss

20    as a result of your conduct?

21    A    Yes, Your Honor.

22    Q    Now, sir, do you understand in order for me to determine

23    an appropriate sentence to impose upon you in this case, I am

24    required to consider as one of the factors what the federal

25    Sentencing Guidelines call for as what we describe an advisory
```

1    guideline sentence?

2    A    Yes, Your Honor.

3    Q    Do you understand that as I sit here today, I do not have

4    all the information I need to be able to tell you what the

5    correct guideline sentencing range would be for your case?

6    A    Yes, Your Honor.

7    Q    Do you understand in order to get the information I need

8    to determine the correct guideline sentencing range for your

9    case, I am going to order the probation office -- and I

10   understand that you don't want me to do that, but we'll talk

11   about that later.  I know there's an agreed sentence in the

12   case, but I understand that's subject to my approval after I

13   review a presentence report.

14         THE COURT:  Is that correct or not?

15         MR. MURRELL:  Well, Judge, it is, but it isn't.  I

16   mean, if the Government wants to tell you what his Sentencing

17   Guideline scores are, if they have it, I'm willing to

18   stipulate to that, but one of the major objectives of this

19   agreement was to get this done today for a variety of reasons.

20         THE COURT:  I thought the Government was objecting

21   to getting it done today.  Maybe -- if they're in agreement

22   with that, that's different.  I thought they were -- they

23   wanted me to wait until the presentence report was prepared.

24         MR. MURRELL:  Judge, I think -- and I don't mean to

25   speak for the Government, but my understanding is the

1    Government felt like given the posture of this plea, they

2    didn't want to force the Court to have to take it like a pig

3    in a poke, and if you felt more comfortable with the PSI, they

4    were not gonna oppose that.

5            They also did not object to my objection to the PSI,

6    and I would point out --

7            THE COURT:  Objecting to having a PSI done?

8            MR. MURRELL:  Yes, sir.

9            And I would point out two things about a PSI in this

10   particular situation.  First, given the Government's

11   invocation of CIPA, I don't know how in the world we're gonna

12   conduct a traditional physician.  And, secondly, my client is

13   very eager to get out of the place where he's being held, and

14   that was one of the factors he made in making his decision.

15           THE COURT:  Well, if both parties want me to go

16   forward with the agreed sentence or the recommended sentence

17   today without going through a PSI, I don't have a problem.  I

18   thought there was an objection to it, and I . . .

19           MR. MURRELL:  I don't think the Government objects.

20           THE COURT:  Okay.

21           MR. STRAUSS:  Your Honor, I think Mr. Murrell is

22   correct in the sense that we did not want to agree to go

23   forward without a PSI, because we didn't want Your Honor to

24   feel in any way like the parties were trying to pressure the

25   Court or keep something from the Court, and if the Court would

1    feel more comfortable with a PSI going forward, then the

2    Government did not want in any way to stand in the way of

3    that.

4           I can articulate to the Court, if you would like,

5    what our estimate of the Sentencing Guidelines are, but,

6    again, we did not want to -- we did not want to be

7    preventing -- in any way seeming to prevent the Court from

8    obtaining more information.

9           THE COURT:  Okay.  All right.  Well, why don't you

10   tell me what you believe the guidelines would turn out to be

11   if we were going to have a report prepared.

12          MR. STRAUSS:  Sure, Your Honor.

13          We estimate that the -- I'll tell you -- give you

14   the headline numbers and then ultimately tell you how we got

15   there.

16          Ultimately, we find that the total offense level

17   would be 18, with a criminal history category of two, and that

18   would yield a guideline range of 30 to 37 months.  The way

19   that we calculate that, the base offense level is seven under

20   2B1.1(a)(1), because this is an offense with a maximum term of

21   20 years or more.

22          The loss is $338,366.  That is based on records from

23   Western Union and Publix showing the defendant's activities

24   from 2011 to 2017.  Because that loss is between $250,000 and

25   $550,000, that adds a 12-level enhancement.

```
 1              There are also more than 10 victims, so there is a
 2    two-level enhancement under 2B1.1(b)(2).
 3              So seven, plus 12, plus two is an offense level of
 4    21, with three points for acceptance of responsibility, that
 5    would reduce it to 18.
 6              The defendant has one criminal convictions that
 7    would receive points under the guidelines.  That is a 2006
 8    conviction from the Southern District of Alabama.  His
 9    sentence there was more than a year and a month.  Therefore,
10    it would be three points, putting him in criminal history
11    category two.
12              Therefore, the guideline range at category two,
13    level 18, would be 30 to 37 months.
14              THE COURT:  All right.  So that's -- you don't
15    disagree with that calculation as to --
16              MR. MURRELL:  We'll accept that, Judge.
17              THE COURT:  All right.  So then let me, in view of
18    the agreed recommended sentence of 25 months with a 30-month
19    guideline range, I don't have a problem with that --
20              MR. MURRELL:  Thank you.
21              THE COURT:  -- a joint recommendation of a variance
22    of five months.
23              MR. MURRELL:  Thank you.
24              THE COURT:  So . . .
25    BY THE COURT:
```

```
 1   Q    All right.  So, sir, let's move away from the
 2   guideline -- presentence report.
 3             But regardless, I'm supposed to consider the
 4   guideline range in making my sentencing determination, you
 5   understand that?  And I've just been told what the parties
 6   believe the guideline range is, which is 30 to 37 months of
 7   imprisonment.  That's something that I should consider in
 8   making my decision, do you understand that?
 9   A    Just a second.
10             (Discussion held off the record between defense
11   counsel and the defendant.)
12             THE DEFENDANT:  Yes, Your Honor.  I just . . .
13   BY THE COURT:
14   Q    Okay.  And you understand that in this case, which is
15   unusual, you and the Government are agreeing to recommend a
16   particular sentence to me that if -- if I accept, I have to
17   sentence you in accordance with the agreement.  Do you
18   understand that?
19   A    Yes, Your Honor.
20   Q    And do you understand that agreement is that you serve or
21   be sentenced to 25 months of imprisonment?  Do you understand
22   that?
23   A    Yes, Your Honor.
24   Q    Okay.  And that's a little bit below the guideline range
25   that I have to take into consideration, do you understand
```

1    that?

2    A    Yes, Your Honor.

3    Q    Okay.  Do you also understand that I'm going to decide

4    whether you should be placed on supervised release for one to

5    three years?  That's something that you're leaving to my

6    discretion, do you understand that?

7    A    Yes, Your Honor.

8    Q    Do you understand that you would have the $100 special

9    assessment imposed upon you?

10   A    Yes, Your Honor.

11   Q    And do you understand that you would be ordered to pay

12   restitution in the amount of $338,366.69?

13   A    Yes, Your Honor.

14   Q    Okay.  And that you -- do you also understand, as part of

15   the agreement, that you would not get any further reduction

16   from the Government -- or from your sentence based upon a

17   motion by the United States to reduce your sentence because of

18   any assistance or cooperation you may have provided to the

19   Government in this case or any other matters?

20   A    Yes, Your Honor.

21   Q    Okay.  All right.  And do you understand if I do not

22   accept the agreed sentence that you and the Government are

23   presenting to me, then you can withdraw your plea of guilty?

24   Do you understand that?

25   A    Yes, Your Honor.

```
1    Q    Now, do you understand that the plea agreement will be
2    voided if you fail to or refuse to make a full and accurate
3    and complete disclosure to the probation office or the
4    Government of any of the information that's relevant to your
5    conduct in this case, or if you've been found to make any --
6    have made any misrepresentations to the Government before
7    entering into this plea agreement, or you commit any
8    misconduct after entering into the plea agreement?  Do you
9    understand that the plea agreement would be declared void?
10   A    I understand.
11   Q    Do you understand that you've agreed to assist the United
12   States in any forfeiture proceedings related to any assets or
13   property that you might have acquired as a result of your
14   illegal conduct, and you're going to assist the Government in
15   giving up any claim or right that you have to any of that
16   property?
17   A    Yes, Your Honor.
18   Q    And you've agreed to identify any assets that -- and
19   assist in the transfer of any of those assets to the United
20   States, and you would sign any documentation that is necessary
21   to effectuate that forfeiture and transfer?
22   A    One minute, Your Honor.
23            (Discussion held off the record between defense
24   counsel and the defendant.)
25            THE DEFENDANT:  Yes, Your Honor.
```

1   BY THE COURT:

2   Q    Do you understand that ordinarily when someone is

3   sentenced by the Court, the person who is sentenced has the

4   right to take an appeal and challenge the sentence before the

5   court of appeals?

6   A    I understand, Your Honor.

7   Q    Do you understand in this case, because it's a joint

8   agreed recommended sentence, that you have agreed to give up

9   or waive your right to appeal the sentence, since you're

10  effectively agreeing to the sentence that I'm going to impose?

11  A    Yes, Your Honor.

12  Q    And did you understand you ordinarily would have a right

13  to appeal the sentence that's imposed upon you?

14  A    Yes, Your Honor.

15  Q    Did you discuss your right to appeal the sentence with

16  your attorney?

17  A    Yes, Your Honor.

18  Q    And did you give up your right to appeal the sentence in

19  this case freely and voluntarily?

20  A    Yes, Your Honor.

21  Q    Did anyone force you or threaten you to give up your

22  right to appeal the sentence?

23  A    No, Your Honor, no.

24  Q    Do you also understand as part of the plea agreement, you

25  are agreeing to have me issue an order ordering your removal

```
 1    from the United States after the completion of your

 2    sentence --

 3    A     Yes, Your Honor.

 4    Q     -- to the country of Israel?  Do you understand that?

 5    A     Yes, Your Honor.

 6    Q     And you've agreed that you are a native and citizen of

 7    Israel, and that's the place to which you should be removed

 8    after you complete your sentence?

 9    A     Yes, Your Honor.

10    Q     And you understand you've given up or waived any right

11    that you might have to challenge your deportation through the

12    immigration process here in the United States?  You've given

13    up your right to do that, and you're waiving your right to

14    challenge your deportation to Israel; do you understand?

15    A     Yes, Your Honor.

16    Q     And you've had the advice of counsel about that; is that

17    correct?

18    A     Yes.

19    Q     And after receiving the advice of counsel, you're

20    agreeing to give up your -- any right you might have to

21    challenge deportation?

22    A     Yes.

23    Q     And do you understand that you've agreed to assist the

24    Government and the Immigration Service in effectuating your

25    removal to Israel, and you will sign any documents that are
```

1    necessary in order to have that occur?

2    A    Yes, Your Honor.

3    Q    Do you also understand that after the entry of the order

4    of removing, you will permanently be inadmissible to the

5    United States, and you cannot come back to the United States

6    again?  Do you understand that?

7    A    Yes, Your Honor.

8    Q    And you agree not to re-enter, attempt to enter or

9    transit through the United States without seeking and

10   obtaining permission to do so from the appropriate authorities

11   of the United States; do you understand that?

12   A    Yes, yes, Your Honor.

13   Q    Now, sir, do you understand you have the right to

14   continue to plead not guilty in this case, and you have the

15   right to have your case tried before a jury?

16   A    I understand that, Your Honor.

17   Q    Do you understand if you had a jury trial, you would have

18   the right to be represented by an attorney throughout the

19   trial, and if you could not afford an attorney, one would be

20   appointed to represent you?

21   A    I understand that, Your Honor, yeah.

22   Q    Do you understand if you had a jury trial, you would be

23   presumed innocent of the charges the United States has brought

24   against you, and the United States would be required to prove

25   your guilt to the jury beyond a reasonable doubt?

1   A      Yes, Your Honor.

2   Q      Do you understand if you had a jury trial, you would have

3   the right to confront the witnesses the United States calls

4   against you, you would have the right to have those witnesses

5   cross-examined in your presence, and you would be able to

6   challenge all the evidence the United States presented against

7   you during the case?

8   A      Yes, Your Honor.

9   Q      Do you understand if you had a jury trial, you would have

10  the right, if you chose to exercise it, to testify in your own

11  defense, you would have the right to present other evidence

12  and witnesses in your defense, and you would have the ability

13  to subpoena witnesses to compel them to come in and testify in

14  your defense?

15  A      Yes, Your Honor.

16  Q      Do you understand if you had a jury trial, you would also

17  have the right not to testify or present evidence against

18  yourself if you chose not to?

19  A      Yes, Your Honor.

20  Q      And do you understand if you chose not to testify, the

21  United States could not use that decisions against you and

22  argue to the jury that because you did not testify the jury

23  should find you guilty?

24  A      Yes, Your Honor.

25  Q      Do you understand if you had a jury trial and the jury

```
 1    did find you guilty, you would have the right to take an

 2    appeal and challenge that conviction before a higher court?

 3    A    Yes.

 4    Q    Do you understand by pleading guilty in this case, you

 5    will give up your right to a jury trial and all the rights

 6    that are an aspect of a jury trial that we just discussed?

 7    A    Yes.

 8    Q    Do you also understand by pleading guilty in this case,

 9    you will be adjudicated guilty of a felony offense, and as a

10    result, you could be deprived of valuable civil rights, such

11    as the right to vote, the right to hold public office, the

12    right to serve on a jury and the right to possess any type of

13    firearm?

14    A    I understand that, Your Honor, yes.

15    Q    Do you understand if you are not a United States citizen,

16    by pleading guilty in this case, you could be deported and

17    will be deported from this country and not be permitted to

18    return?

19    A    Yes, Your Honor.

20    Q    Now, sir, in addition to the plea agreement that we've

21    already discussed, I've been given two other documents that

22    I'd like to mention to you.  One is a document called a

23    "Factual Proffer."  Have you seen this document, the document

24    called the "Factual Proffer?"

25         (Discussion held off the record between defense counsel
```

```
 1   and the defendant.)

 2           MR. MURRELL:  Judge, I just -- he wants me to make

 3   the interlineations here.

 4           THE COURT:  Okay.  That's fine.

 5   BY THE COURT:

 6   Q    Have you seen this factual proffer I'm holding?

 7   A    Yes, Your Honor.

 8   Q    Did you read it?

 9   A    I did.

10   Q    And after you read it, did you discuss it fully and

11   completely with your attorney?

12   A    I did.

13   Q    And after you read it and discussed it with your

14   attorney, did you make some changes to it on page 2?  Were

15   there two -- I guess there were three sentences, it looks

16   like, that were typed in originally, but you crossed them out

17   and initialed them on the side of page 2; is that correct?

18           MR. MURRELL:  I did.

19           THE DEFENDANT:  I did not initial that, but . . .

20           THE COURT:  You didn't initial it?

21           MR. MURRELL:  I did and Mr. Strauss did.

22           THE COURT:  Well, I need him to initial it, as well,

23   so . . .

24           MR. MURRELL:  Yes, sir.

25   BY THE COURT:
```

```
1    Q    All right.  Sir, so you see on page 2 of the factual

2    proffer there are some typewritten lines that have been

3    stricken through and initialed on the side?  Do you see that?

4    A    I see that, sir.

5    Q    And did you agree to those changes, to strike out those

6    portions of the factual proffer?

7    A    Yes.

8    Q    And you initialed them as an indication of your agreement

9    to remove them?

10   A    Yes.

11   Q    And then did you -- after making those changes, did you

12   then sign the document on the last page on the bottom

13   signature line?

14   A    I did.

15   Q    And did you sign this document freely and voluntarily?

16   A    Yes, Your Honor.

17   Q    Did anyone force you or threaten you in any way to sign

18   it?

19   A    No, Your Honor.

20   Q    And I don't remember if I asked you this, but after you

21   read this, did you discuss it fully and completely with your

22   attorney?

23   A    Yes, I did.

24   Q    And did you understand everything that was stated in this

25   factual proffer?
```

```
1    A    As far as I'm concerned, yes.  I mean . . .

2    Q    You understood everything that's in there?

3    A    Yes.

4    Q    And you thoroughly discussed it with your attorney?

5    A    Yes, I did.

6    Q    And after making those changes, do you agree that

7    everything stated in this factual proffer is true and correct?

8    A    As far as the original ones that I was . . . yes.

9    Q    After you struck out the portions that you initialed, the

10   rest of it, do you agree everything else is true and correct

11   that's in this document?

12   A    Yes, yes.

13   Q    And do you agree that the United States could prove all

14   of this that's stated in this document before a jury beyond a

15   reasonable doubt if we had a trial?

16   A    Yes, Your Honor.

17   Q    And do you agree that these facts that are in this

18   factual proffer support the charge and meet all the elements

19   of the offense to which you're pleading guilty?

20   A    Yes, Your Honor.

21   Q    All right.  And then there's another document that I want

22   to go over with you, and that is called "Defendant's Plea

23   Statement in Support of Judicial Removal."  Have you seen this

24   other document that --

25   A    I did not, Your Honor.
```

```
 1              MR. MURRELL:  You did.

 2              THE COURT:  All right.  You want to take a look at

 3   it.

 4        (Discussion held off the record between defense counsel

 5   and the defendant.)

 6              THE DEFENDANT:  Your Honor, I've seen this, but

 7   obviously all these numbers and paragraphs I'm not familiar

 8   with, so . . .

 9   BY THE COURT:

10   Q    All right.  Well, do you need some time --

11   A    The general idea, I understand what it means.

12   Q    Okay.  Well, I don't want you to rush into anything, so

13   do you want more time to look at that document?  Do you need

14   some more time to look at it and talk to your attorney about

15   it before we go forward?

16   A    The bottom line of the whole document is for me to

17   consent to whatever's in there, and I consent fully for it, of

18   course.

19   Q    Okay.  But I want you to understand what you're

20   consenting to.  You're consenting to be removed from the

21   United States to -- for me to enter an order directing you to

22   be removed to Israel after you complete your sentence.  That's

23   what that --

24   A    I want that to happen, Your Honor.

25   Q    Okay.  So you agree to that?
```

```
 1    A    Yes, Your Honor.

 2    Q    And so you -- but you have looked at that document?

 3    A    Yes.

 4    Q    And you've discussed it with your attorney?

 5    A    Yes, Your Honor.

 6    Q    And you understand what it accomplishes?

 7    A    Yes, Your Honor.

 8    Q    And you signed it?

 9    A    Yes, Your Honor.

10    Q    You signed it freely and voluntarily?

11    A    Yes, Your Honor.

12    Q    And you agree that I can enter an order of judicial

13    removal of you from the United States to Israel?  You agree to

14    that?

15    A    Yes, yes, Your Honor, yes.

16              THE COURT:  Okay.  All right.  Is there anything

17    else I need to cover with the defendant before I accept his

18    plea?

19              MR. STRAUSS:  No, Your Honor.

20              THE COURT:  Mr. Murrell?

21              MR. MURRELL:  Not on behalf of the defense, no, sir.

22              THE COURT:  Okay.  All right.  In the case of the

23    United States of America versus Mohammed Agbareia, it is the

24    finding of the Court that the defendant is fully competent and

25    capable of entering an informed plea, that he is aware of the
```

1    nature of the charge and the consequences of his plea, that

2    his plea of guilty is a knowing and voluntary plea, supported

3    by an independent basis in fact containing each of the

4    essential elements of the offense.  The plea's therefore

5    accepted, and the defendant is now adjudged guilty of count 5

6    of the superseding indictment.

7             The Court is also going to find that based upon the

8    information received this morning about the guideline

9    calculations, that the Court has sufficient information to

10   exercise meaningful sentencing authority under 18 U.S.C.,

11   Section 3553, and therefore I will waive the need for a

12   presentence investigation report, and we will proceed directly

13   to sentencing at this time.

14            So is there anything we need to do other than --

15   anyone who wants to be heard on anything before I impose

16   sentence?

17            MR. MURRELL:  No, nothing from the defense, Judge.

18            MR. STRAUSS:  No, Your Honor, I don't think there's

19   anything else.

20            THE COURT:  Mr. Agbareia, did you want to say

21   anything before I impose sentence?

22            THE DEFENDANT:  Your Honor, I've been here for 10

23   years, and I appreciate your hospitality for me being here,

24   and it was my choice to volunteer to deport, and I am not

25   looking forward for it, but I am looking forward to start a

```
 1   new life in my own country, where I can just forget about the
 2   nonsense that I've done, and I think it's time for me just to
 3   settle with my family.  I'm 51, or more than 52 years old, and
 4   after giving it so much thought, I thought my own country
 5   would be the proper place for me to be, and my deepest
 6   apologies for whatever is done, but it shall be done.
 7              THE COURT:  All right.  Thank you, sir.
 8              All right.  The Court has considered the statements
 9   of the parties, the advisory guideline range that's been
10   represented to the Court, the statutory factors set forth in
11   18 U.S.C., Section 3553.
12              The Court will accept the joint recommendation of
13   the parties for a sentence in this case.
14              Pursuant to the Sentencing Reform Act of 1984, it's
15   the judgment of the Court that the defendant, Mohammed
16   Agbareia, is hereby sentenced to a term of imprisonment of 25
17   months.  Upon release from imprisonment, the defendant shall
18   be placed on supervised release for a term of two years.
19              While on supervised release, the defendant shall not
20   commit any crimes, he shall be prohibited from possessing a
21   firearm or other dangerous devices, and he shall not possess a
22   controlled substance.  He shall cooperate in the collection of
23   DNA and shall comply with the standard conditions of
24   supervised release that have been adopted by this Court, as
25   well as the following special condition:
```

1    Surrendering to Immigration for removal after

2  imprisonment.

3    The Court also orders that the defendant pay a

4  special assessment of $100, and the Court orders that the

5  defendant pay restitution in the amount of $338,366.69.

6    Restitution shall be paid as follows.  During the

7  period of incarceration, payment shall be made as follows:

8    If the defendant earns wages in a Federal Prison

9  Industries Unicore job, then the defendant must pay 50 percent

10  of the wages earned towards the financial obligations imposed

11  by this judgment in a criminal case.  If the defendant does

12  not work if a Unicore job, he must pay $25 per quarter towards

13  the financial obligations imposed in this order.

14    Upon release from imprisonment, the defendant shall

15  pay restitution at the rate of 10 percent of his monthly gross

16  earnings until such time as the Court may alter that payment

17  schedule in the interests of justice.

18    United States Bureau of Prisons, the United States

19  Probation Office and the United States Attorney's Office shall

20  monitor payment of restitution and shall report to the Court

21  any material change in the defendant's ability to pay.

22    These payments do not preclude the Government from

23  using any other anticipated or unexpected financial gains,

24  assets or income of the defendant to satisfy the restitution

25  obligations.

```
 1              The restitution shall be made payable to the Clerk

 2    of the Court and forwarded to the United States Clerk's

 3    Office, Attention Financial Section, 400 North Miami Avenue,

 4    Room 8N09, Miami, Florida, 33128.  Restitution shall be

 5    forwarded by the Clerk of the Court to the victims that are

 6    identified of record in this case.

 7              As I already said, upon release from imprisonment,

 8    the defendant shall be placed on supervised release for a term

 9    of two years.  And he shall not commit any crimes, he shall be

10    prohibited from possessing a firearm or other dangerous

11    devices, and he shall not possess a controlled substance.  He

12    shall comply with the standard conditions of supervised

13    release, and as I said already, comply with the special

14    condition of surrendering to Immigration for removal after

15    imprisonment, and a $100 special assessment.

16              So the total sentence is 25 months' imprisonment,

17    two years' supervised release, $338,366.69 restitution and a

18    $100 special assessment.

19              The Court will also enter the order of judicial

20    removal.

21              And now that sentence has been imposed, does the

22    defendant or his counsel object to the Court's findings of

23    fact or the manner in which sentence was pronounced?

24              MR. MURRELL:  No, sir, Judge.

25              THE COURT:  Does the Government?
```

1              MR. STRAUSS:  No, Your Honor.

2              THE COURT:  Mr. Agbareia, you have the right to

3      appeal the sentence that's been imposed.  If you wish to file

4      an appeal, you must file your notice of appeal within 14 days

5      from the date judgment's entered in this case.  If you're

6      unable to pay for the cost of an appeal, you may seek leave to

7      file the appeal in forma pauperis.

8              Is there anything else I need to cover?

9              MR. MURRELL:  No, sir, I don't believe so.

10             MR. STRAUSS:  I don't believe so, Your Honor.

11             THE COURT:  Good luck to you, sir.  Thank you.

12             THE DEFENDANT:  Your Honor, thank you very much.

13         (Proceedings concluded.)

14                        *  *  *  *  *

15

16

17

18

19

20

21

22

23

24

25

```
1                          * * * * *

2                        I N D E X

3    Testimony of Mohammed Mustafa Agbareia

4           Examination by the Court              3

5    Court's Imposition of sentence              27

6                          * * * * *

7                      E X H I B I T S

8    (None.)

9                          * * * * *

10                       CERTIFICATE

11       I, Stephen W. Franklin, Registered Merit Reporter, and

12   Certified Realtime Reporter, certify that the foregoing is a

13   correct transcript from the record of proceedings in the

14   above-entitled matter.

15       Dated this 4th day of DECEMBER, 2017.

16

17       /s/Stephen W. Franklin
         _____
18       Stephen W. Franklin, RMR, CRR

19

20

21

22

23

24

25
```